### UNITED STATES v. BLACK et al.

(Circuit Court of Appeals, Eighth Circuit. November 30, 1917.)

#### No. 4839.

1. SIGNATURES ⬅5—SUFFICIENCY—USE OF MARK—"SUBSCRIPTION."

Under Comp. Laws Okl. 1909, § 2965, which provides that "signature or subscription includes mark when the person cannot write, his name being written near it, and written by a person who writes his own name as a witness," as construed by the Supreme Court of Arkansas before it was copied from the statutes of that state into those of Oklahoma, a deed signed by mark is valid, although the subscribing witness is not the person who wrote the name.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Signature; Subscription.]

2. INDIANS ⬅15(1)—LANDS—VALIDITY OF DEED—APPROVAL BY PROBATE COURT—"COURT HAVING JURISDICTION OF SETTLEMENT OF ESTATE."

Act May 27, 1908, c. 199, § 9, 35 Stat. 315, provides: "The death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee." Rev. Laws Okl. 1910, § 1823, provides that the county courts "shall always be open and in session for the transaction of all probate business in their respective counties." Held, that the approval of a deed executed by a full-blood heir of a deceased allottee by the judge of the county court having jurisdiction over the allottee's estate at any place within the county, although not at the county seat, was an approval by the court, within the statute, and valid, especially where the order was subsequently entered of record at the county seat.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the United States against George E. Black and others. Decree for defendants, and the United States appeals. Affirmed.

Archibald Bonds, Sp. Asst. U. S. Atty., of Muskogee, Okl., Lewis C. Lawson, of Holdenville, Okl., and R. C. Allen, Creek National

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Atty., and J. C. Davis, Asst. Creek National Atty., both of Muskogee, Okl. (W. P. McGinnis, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Preston C. West, of Tulsa, Okl. (Roger S. Sherman, A. A. Davidson, and J. P. O'Meara, all of Tulsa, Okl., on the brief), for appellees.

Before HOOK, SMITH, and STONE, Circuit Judges.

SMITH, Circuit Judge. A bill of complaint was filed in this case which covers over 30 printed pages. The whole case turns upon its sufficiency. It is manifest that we cannot set this bill out in full, but must abbreviate it in this opinion. The defendant filed a motion to dismiss for want of equity, and also for want of jurisdiction. This motion was sustained, and the case dismissed, and the original plaintiff brought the case here by appeal.

We will briefly state the facts as gathered from the bill: About 1893, Tom Lucas, a white man and noncitizen of the Creek Nation, was married to one Mollie, maiden surname not shown, a full-blood Creek Indian. To this marriage was born one son, Sam Lucas. Both Mrs. Lucas and her son Sam were enrolled; the former as 7884, and the latter as 7885. One hundred and sixty acres of land were selected in behalf of and allotted to Sam Lucas about June 30, 1902. Later, about October 6, 1902, and before the issuance of any trust patent to him, Sam Lucas departed this life, leaving as his sole heir his mother, Mollie Lucas. About April 14, 1903, a patent was issued on said land in the name of Sam Lucas as grantee. Prior to his death his father and mother had been divorced in 1895, and at some time thereafter, which does not accurately appear, said Mollie Lucas married Albert Harjo. On March 29, 1912, Mollie Harjo and said Tom Lucas, who seems to have been assumed to have been an heir of Sam Lucas, signed, or attempted to sign, a deed of said land to John W. Carter, in consideration of $800, with a reservation of the oil and gas upon the south 80 acres. It is claimed the deed was invalid because:

"The said Mollie Harjo is a full-blood Creek Indian woman, and was duly enrolled as a full-blood Creek Indian and member of said Creek tribe upon the approved rolls of said tribe; that she has always lived and resided in said Creek Nation, and among the members of said tribe, and grew to womanhood under the influences of said tribe, and under its usages, customs, and traditions; that she possesses no educational qualifications whatever, and can neither read, write, speak, nor understand the English language, and can neither read nor write the language of her own tribe, or write her own name, but is obliged, for these reasons to make her signature by mark to any written instrument; that the said Mollie Harjo is wholly illiterate, and is very unintelligent, and has but little conception of the value of property, and especially real estate, and has very little knowledge of the way and manner of transacting business, and is now, and ever since the death of said Sam Lucas and prior thereto has been, mentally incompetent and incapable of managing and controlling her own affairs, and especially matters pertaining to said lands or the disposition thereof, and of knowing the true value of said lands;" that said deed purports to have been signed by Mollie Harjo by her mark, witnessed by James A. Long and Albert Harjo, the vendor's husband; that James A. Long also took the acknowledgment; that he was jointly interested in said purchase with said John W. Carter of said lands, and both he and the husband of Mollie Harjo were disqualified as witnesses.

The same day, namely, the 29th of March, 1912, the deed was pre- sented to the county court in session, and it made an order which re- cites in its caption that it was made in the county court, the state of Oklahoma, county of Hughes, and contained the following:

"It is ordered, adjudged, and decreed by the county court of Hughes coun- ty, in the state of Oklahoma, that the said deed executed this day by Mollie Harjo, née Lucas, conveying to John W. Carter the said allotment of Sam Lucas, deceased, be and the same hereby is approved, ratified, and confirmed, with the reservation as to oil and gas mentioned in said deed." This was signed: "P. W. Gardner, County Judge of Hughes County, State of Oklahoma."

On the 24th of April, 1913, the said Mollie Harjo gave a quitclaim deed to J. B. Turner of all the land inherited from Sam Lucas, which it is alleged was intended to convey her oil and gas right reserved by deed previously referred to. This deed was in consideration of $100, which, it is alleged, was an inadequate consideration. It was signed by the mark of Mollie Harjo, witnessed by Mitchell Compier and Albert Harjo, and was acknowledged before J. Ross Bailey, county judge of Hughes county. J. Ross Bailey, county judge of Hughes county, Oklahoma, signed upon the face of said deed:

"Approved by me.
"J. Ross Bailey, County Judge, Hughes County, Oklahoma."

Judge Bailey also signed an order which states in the caption that it is in the county court of Hughes county, state of Oklahoma, in the matter of approval of quitclaim deed from Mollie Harjo, née Lucas, to J. B. Turner, and after numerous recitals of the facts concludes:

"It is therefore ordered, adjudged, and decreed by this court that the sale of the remaining interest of said Mollie Harjo, née Lucas, in and to the property herein described to J. B. Turner, be and the same is in all things hereby approved and confirmed.
"J. Ross Bailey, County Judge of Hughes County, Oklahoma."

It is alleged:

"That said pretended approval upon the face of said deed by said county judge, and the pretended approval of said county court, aforesaid, were signed, and said approvals attempted to be performed, simply by the said J. Ross Bailey, on the 24th day of April, 1913, at the town of Atwood, in said county of Hughes, Oklahoma, and not by the county court of said Hughes county; that said deed to said Turner and said pretended approval were presented to the said J. Ross Bailey by said J. B. Turner at said town of Atwood on said date, and the same were then and there signed by said J. Ross Bailey; that said town of Atwood is not a court town of said Hughes county, state of Oklahoma, and was not a county court town of said Hughes county on the 24th day of April, 1913, or at any other time, either prior or subsequent there- to, * * * and such was not the act or approval of said county court; that said deed to said Turner has never been approved by the county court of said Hughes county."

On the 22d of April, 1915, said Mollie Harjo and her husband, Al- bert Harjo, undertook to sell and convey to F. S. Freeland and Albert Duemcke all the oil, gas, and petroleum in and underlying the south half of the property in controversy, and presented their deed to the county court for approval. On May 4, 1915, said court, J. Ross Bailey presiding, refused to approve said deed, and directed George E. Black, attorney for the persons objecting to such approval, to draw an order

to that effect, but that said George E. Black presented said order for approval by the judge, pretending that the same was drawn in accordance with directions theretofore given him; that the said J. Ross Bailey, without having read said order, and without knowing the terms thereof, signed the same, with the intention of showing simply his disapproval of said deed to said Freeland and Duemcke; that it contained a provision:

"That this court on the ——— day of April, 1913, approved a deed of conveyance executed by Mollie Harjo to one J. B. Turner, of Holdenville, Oklahoma, upon the said south half of the northeast quarter of section four, township 18 north, range 7 east; and the court further finds that the said Mollie Harjo, who executed said deed to said Turner, conveying all of her interest in said land, is the same person as the grantor in the deed now presented to the court for the approval; and the court further finds that the order of approval of the deed executed and delivered to said Turner was by this court, and that the order was made after the submission of testimony to the court, and after the court found from such testimony that the deed was given for fair consideration; and the court now finds and holds his action in approving said deed of conveyance to the said Turner was legal under the law, and is hereby reaffirmed and is approved."

The bill alleges:

"At the time said order was so signed by the said J. Ross Bailey as aforesaid, the said county court of said Hughes county nor the said J. Ross Bailey, as the judge thereof, had no power, authority, or jurisdiction to approve, or attempt to approve, said deed to said J. B. Turner; that said pretended order, wherein the same purports to reaffirm or to approve said deed to said Turner, is absolutely null and void; * * * that, had the said J. Ross Bailey have known that said order embraced any provisions for the reaffirmation or approval of said deed to said Turner before signing the same, the said J. Ross Bailey would have refused to sign same, but, having no knowledge that said matter was contained in said order, he signed said order, intending thereby simply to disapprove said deed to said Freeland and Duemcke, and for no other purpose."

All three of these orders of approval recite that they were made upon the petition of Mollie Harjo.

The government claims that it has the right to maintain this action under the authority of Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820, Mullen v. United States, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, and United States v. Gray, 119 C. C. A. 529, 201 Fed. 291. And see Deming Investment Co. v. United States, 224 U. S. 471, 32 Sup. Ct. 549, 56 L. Ed. 847; and in this court United States v. Allen, 103 C. C. A. 1, 179 Fed. 13, and United States v. Owen, 106 C. C. A. 668, 184 Fed. 990; Bowling v. United States, 111 C. C. A. 561, 191 Fed. 19; Wright v. United States, 115 C. C. A. 673, 196 Fed. 1007; United States v. Noble, 116 C. C. A. 654, 197 Fed. 292; United States v. La Roque, 117 C. C. A. 349, 198 Fed. 645; United States v. Fitzgerald, 119 C. C. A. 533, 201 Fed. 295; and United States v. Joyce, 240 Fed. 610, 154 C. C. A. 653.

The defendants include various direct and remote grantees of the title by the vendees of Mollie Harjo, but whether they are innocent purchasers or not is not alleged, and does not, of course, anywhere appear.

In Sunday v. Mallory, 150 C. C. A. 408, 237 Fed. 526, it was held that, where a Cherokee died after enrollment and before allotment, his land went to his heirs free from all restrictions; but not only was the law as to the Cherokees somewhat different from the law as to the Creeks, but in this case allotment had taken place before the death of Sam Lucas. We have therefore concluded to pass upon this case upon other grounds, leaving the question as to whether the rule in Sunday v. Mallory is applicable to the facts here to another time, if it should ever arise, when it becomes necessary to pass upon it.

Under section 6 of the Supplemental Creek Agreement (32 Stat. 500, 501, c. 1323) Mollie Harjo was the sole heir of Sam Lucas; but, as already stated, it was assumed, apparently by all parties, at the time of the deed of March 29, 1912, that the land descended to her and her former husband, the father of Sam Lucas, namely, Tom Lucas.

[1] We shall inquire, first: Did Mollie Harjo legally sign the deed to John W. Carter of March 29, 1912, and did she so sign the J. B. Turner deed of April 24, 1913? That she in fact put her mark to both of said deeds as her signature is neither disputed nor denied in the bill. The laws of Oklahoma in force at the time (Snyder's Compiled Laws of Oklahoma 1909) contained in section 2965:

" 'Signature' or 'subscription' includes mark, when the person cannot write, his name being written near it, and written by a person who writes his own name as a witness."

Mansfield's Digest of the Laws of Arkansas, § 6344, contains the following:

"Signature or subscription includes mark, when the person cannot write, his name being written near it and witnessed by a person who writes his own name as a witness."

In view of the well-known history of Arkansas and Oklahoma, and their relations and the identity of the language, it is not difficult to conclude that the statute of Oklahoma quoted was taken from Arkansas. It is elementary that the adoption of a statute adopts the construction already put upon the statute by the court of last resort of the state from which it came. Long before the admission of Oklahoma the Supreme Court of Arkansas had repeatedly construed this statute, and held that if a person signed by his mark and without the person who signs his name signing as a witness, and even when no one signs as a witness at all, the signature was still valid, if proved. Ex parte Miller, 49 Ark. 18, 3 S. W. 883, 4 Am. St. Rep. 17; Davis v. Semmes, 51 Ark. 48, 9 S. W. 434. This construction must be deemed to have been adopted by Oklahoma when it adopted this statute; and, the bill failing to negative that Mrs. Harjo attached her mark to these instruments, we must conclude that she properly executed both these deeds, notwithstanding the allegations as to defects in the witnesses.

It is alleged that Jas. A. Long, who took the acknowledgment of the Carter deed, was interested in the purchase with the vendee; but no acknowledgment was necessary as between the grantor and grantee. Section 1195 of Snyder's Compiled Laws of Oklahoma 1909. We therefore find the Carter and Turner deeds were both properly exe-

cuted, and no attack is made upon the approval of the Carter deed by the county court.

[2] In chapter 199 of the Acts of the 60th Congress (35 Stat. 312, 315), it is provided:

"Sec. 9. That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

It will be observed that this section first removes all restrictions upon the alienation of such lands as those here in question, and in the same breath replaced them with a restriction upon a full-blooded heir, by requiring that his deed, to be valid, must be approved by the court having jurisdiction of the settlement of the estate of the deceased allottee. If the John W. Carter deed was valid, it still reserved the oil and gas upon the south 80 acres; so we turn to the question as to the validity of the approval of the Turner deed. No argument that it was meant thereby to only convey the oil and gas can be effectual, as it was a deed absolute in form, and conveyed all the right, title, and interest of Mollie Harjo in and to the land.

It is conceded that the county court of Hughes county, Okl., was the court having jurisdiction of the settlement of the estate of Sam Lucas. That was the court, therefore, which must approve the deed or deeds of Mollie Harjo. The laws of Oklahoma then in force, but subsequently embraced in the Revised Laws of Oklahoma, provide as follows:

"Sec. 1823. In each county, commencing on the first Mondays of January. April, July and October of each year, except as otherwise herein provided, county court shall convene at the county seat and continue in session so long as business may require: Provided, that said courts shall always be open and in session for the transaction of all probate business in their respective counties."

This court is also always open for the trial of those cases triable under justice of the peace procedure and for the purpose of taking and entering judgments by confession. Wilson v. State, 3 Okl. Cr. 714, 109 Pac. 289. The mere name "county court" conveys but little as to its jurisdiction. In many states such courts exercise the taxing power, and in many exercise or did exercise the functions now generally intrusted to boards of supervisors or commissioners, and substantially all exercise limited judicial functions.

It must be borne in mind that "the court having jurisdiction of the settlement of the estate" of Sam Lucas was always in session. We have no desire to conflict with, much less to overrule, those cases which draw a correct distinction between a court and the judge thereof, and limit the power of courts to act in vacation; but the law says there shall be no vacation in the county court in probate matters, consequently the "court having jurisdiction of the settlement of the estate" of Sam Lucas is always in session. Where? At the county seat or some court seat where there is no judge, or where the judge is, although it be away from the county seat or some court seat? We have concluded the latter is meant, and that this deed was approved by the

county court when the county judge approved it within the county, and especially so where the order is subsequently entered of record at a court seat, which we understand was done here. We therefore conclude the approval of the deed to Turner at Atwood was valid. See Lee County v. Nelson, 4 G. Greene (Iowa) 348.

Mollie Harjo having complied with the only restriction placed upon her by the statute, and there being no sufficient allegation of the facts of fraud or the like, the petition failed to state a cause of action for equitable relief, and the motion to dismiss was properly sustained, and the decree of the District Court is affirmed.