### BARNETT et al. v. KUNKEL et al.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1919.

No. 5208.

1. INDIANS ⊂⊃15(1)—DEED OF INHERITED LAND—APPROVAL BY COURT—JURISDICTION.

A deed by the mother of a minor full-blood Creek Indian, who inherited an allotment of land from her daughter, was of no effect, where approved by the county court of a county of Oklahoma in which the daughter was not a resident when she died; the court not having had jurisdiction.

2. INDIANS ⊂⊃15(1)—ALLOTMENT OF LAND—DEED—STATUTES—"RESTRICTIONS."

Deed of a minor full-blood Creek Indian's allotment of land, inherited by her mother, executed two days before patent for the land was issued, though the selection of the allotment had been legally made and approved before, *held* not void under Act April 26, 1906, § 19, and Act May 27, 1908, § 5, rendering void a deed of lands of the Five Civilized Tribes, if made

before the removal of "restrictions"; "restrictions," as used, referring to prohibitions against alienation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Restriction.]

3. INDIANS ⊂⊃15(1)—DEED OF ALLOTMENT—APPROVAL BY COUNTY COURT—LAPSE OF TIME.

Where the mother of a minor full-blood Creek Indian inherited her daughter's allotment, and deeded it to another in 1909, the approval of the deed by the county court of the county of Oklahoma where the daughter was resident when she died was not void because not made until 1913; mere lapse of time not destroying the deed or taking away power to approve it.

4. COURTS ⊂⊃366(30)—FEDERAL COURT—BINDING FORCE OF STATE DECISION.

A decision of the highest court of a state, defining the powers of an inferior court under the state Constitution and laws, is binding on the Circuit Court of Appeals.

5. COURTS ⊂⊃366(16)—FEDERAL COURT—BINDING FORCE OF STATE DECISION.

Decision of the highest court of a state, determining when an order approving a deed of real property in the state is sufficient to give the deed full validity, constitutes a rule of real property, and probably binds a federal court sitting in the state.

6. INDIANS ⊂⊃15(1)—INHERITED ALLOTMENT—APPROVAL OF DEED IN VACATION.

Order of the county judge of a county of Oklahoma wherein a minor full-blood Creek Indian was resident when she died, approving deed of the mother of such Indian, who had inherited her allotment, held not void because made at the home of the judge, instead of the courthouse, the judge having been ill, or because the term of the county court had adjourned and the adjournment was entered on its records prior to the approval of the deed, while no other term had been legally called, so that the order was entered in vacation.

7. JUDGMENT ⊂⊃521—COLLATERAL ATTACK—CROSS-BILL TO SET ASIDE FOR FRAUD—DISMISSAL ON MERITS.

In suit to quiet title to land formerly the allotment of a minor full-blood Creek Indian, who died, so that the land was inherited by her mother, a defendant, who conveyed it to plaintiffs' predecessor, in view of defendants' cross-bill and offer of proof showing that the mother's attorney, while purporting to act for her in securing the approval of her deed, and in causing decree to be entered in her suit for cancellation against the grantee, forever barring her right, was in fact acting on behalf of the grantee's successor, etc., held, that a summary disposition of the case by entry of decree for plaintiffs and dismissal of the cross-bill on the merits was improper, it being the duty of the court to hear defendants' proofs; the cross-bill not constituting a collateral attack on the order of the county court of Oklahoma approving the mother's deed, but standing as an original bill to set aside for fraud the order approving the deed.

8. JUDGMENT ⊂⊃441—VACATION FOR FRAUD OR COLLUSION—JURISDICTION OF EQUITY.

A court of equity has jurisdiction to set aside judgments obtained by fraud or collusion.

9. ATTORNEY AND CLIENT ⊂⊃77—PRINCIPAL AND AGENT ⊂⊃162—BETRAYAL OF PRINCIPAL OR CLIENT—FRUITS OF BARGAIN.

One who seduces an agent to betray his principal, or an attorney his client, can hold none of the fruits of his bargain.

10. EVIDENCE ⊂⊃91—BURDEN OF PROOF—AFFIRMATIVE CLAIM.

An affirmative claim must be proved by the party who seeks its benefit.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit by W. A. Kunkel and the Prairie Oil & Gas Company against Hannah Canard Barnett and Tucker K. Barnett, wherein defendants filed cross-bill. From a decree for plaintiffs, dismissing the cross-bill on the merits, defendants appeal. Reversed.

Malcolm E. Rosser, of Muskogee, Okl., and Lewis C. Lawson, of Holdenville, Okl. (Charles A. Moon and Francis Stewart, both of Muskogee, Okl., on the brief), for appellants.

Alexander A. Davidson, of Tulsa, Okl. (P. C. West, R. S. Sherman, Grey Moore, and James A. Veasey, all of Tulsa, Okl., and John B. Patterson, of Okemah, Okl., on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. This is a suit in equity by Kunkel and the Prairie Oil & Gas Company against Hannah Barnett and others, to quiet title to a parcel of land which was formerly the allotment of Mahaley Watson, a full-blood Creek, who died while a minor. Hannah Barnett was her mother and sole heir. Defendants answered, and also filed a cross-bill. In these pleadings they denied the equity of the original bill, and asked as affirmative relief that plaintiff's title be canceled and annulled, and that title be quieted and confirmed in Hannah Barnett. The trial court received the plaintiff's proof. When defendants offered evidence in support of their answer and cross-bill, objection was made upon the ground that the same did not state facts sufficient either to constitute a defense, or to entitle defendants to affirmative relief. The court required defendants to make an offer of their proof. This was done, and objection to the same by plaintiffs was sustained, and an exception saved. The court then entered a decree in favor of the plaintiffs and dismissed the cross-bill upon the merits. The present appeal seeks a review of that decree.

We will summarize the cross-bill and defendants' offer of proof. It will, of course be understood that what we say is not proven facts, but defendants' claim, with reasonable inferences such as we are required to indulge in determining whether the trial court's summary disposition of defendants' case was proper.

[1] All parties agree that title to the allotment passed to Hannah Barnett upon the death of Mahaley Watson. March 22, 1909, Hannah executed a deed of the property to one Simms. This deed was presented to the county court of Hughes county and approved. That court, however, was not the one which had jurisdiction, as the minor was a resident of and died in Okfuskee county, so the approval was void, and the deed of no effect. Okla. Oil Co. v. Bartlett, 236 Fed. 488, 149 C. C. A. 540.

Four years later, in March, 1913, Hannah, by a written contract, employed an attorney by the name of Crump to take proper proceedings to have the Simms deed set aside as a cloud upon her title. She also gave Crump a lease of 80 acres of land for 99 years. The contract forbids any settlement or compromise of the suit, except with the approval of the county court of Okfuskee county. It also requires

that a copy be filed with that court. This contract is likewise made a part of the lease. The lease itself forbids its assignment or any right thereunder "until the title to the allotment of Mahaley Watson, deceased, shall have been quieted, as per the terms of the written contract hereinabove referred to." Both instruments are expressly made binding upon successors and assigns. They were filed and approved by the county court. March 27, 1913, the lease was also filed in the office of the register of deeds of Creek county, where the land is located.

Hannah had frequently been solicited to give a new deed of the property, which she had consistently refused to do. In March, 1913, Crump brought the suit required by his contract with her, making Simms, Litchfield (who had succeeded by deed to Simms' rights), and others defendants. The contract with Crump, and the lease to him, were attached as exhibits to the complaint. Simms disclaimed. Litchfield answered.

May 26, 1913, Crump, in violation of the express provisions of the lease, assigned the same to Litchfield. This assignment refers to the lease and the contract, so Litchfield had notice of their restrictions. On the same day Crump also gave Litchfield a quitclaim deed of the land. Neither the deed nor the assignment of the lease was ever approved by the county court. In June, 1913, Crump, while acting as attorney for Hannah, entered into a corrupt agreement with Litchfield, in consideration of $5,000 paid to him personally, and upon a new consideration of $2,000 for himself and Hannah. By the terms of this agreement he was to induce Hannah to execute a new petition for the approval of the Simms deed, which was to be presented to the judge of the county court of Okfuskee county, and an approval of the deed secured. As a part of the same corrupt agreement, the suit then pending against Litchfield to cancel the deed was to be dismissed with prejudice against the bringing of any other suit. In the execution of this contract it is charged that Crump represented to Hannah that the suit to cancel the Simms deed would require a long litigation, and that he desired to be released from his obligation, and in order to secure such release the consent of the county court would have to be obtained. The $2,000 was stated to be a consideration for this release, and for royalties due her on the property. Upon such representations she was induced to sign a petition for the approval of the Simms deed. She was unable to read or speak English, and relied wholly upon the advice of her attorney, and never knew that the petition was for the approval of the deed. This petition was presented to the judge of the county court at his home at a time when he was seriously ill, and also at a time when the term of the county court of Okfuskee county had been adjourned. He signed an order approving the deed, which was afterwards filed with the clerk of his court, not by the judge himself, but presumably by Crump, or somebody acting on behalf of Litchfield. The judge later died without ever again returning to the courthouse, or performing any judicial act there. In performance of the agreement between Litchfield and Crump, a written stipulation, signed by Crump as attorney for Han-

nah, and by counsel purporting to act on behalf of Simms, Litchfield, and the other defendants, was filed in the state court, where the suit had been brought for the cancellation of the Simms deed, and also in the federal court, to which the suit had been removed, and a decree was entered in each of those courts upon the stipulation, adjudging that Hannah had no right, title, or interest in the land, perpetually enjoining her from asserting any claim or right to it, and establishing the title in Litchfield.

The case has been involved in many immaterial issues, which have added greatly to the difficulties of its trial in the lower court and its argument here. We will first dispose of the most meritorious of these issues.

[2] 1. It is argued that Hannah's deed to Simms was void. This contention rests upon the fact that the deed was executed two days before the patent for the land was issued, though the selection of the allotment had been legally made and approved long before. Section 19 of the Act of April 26, 1906 (34 Stat. 144, c. 1876), and section 5 of the Act of May 27, 1908 (35 Stat. 313, c. 199) render a deed of lands of the Five Civilized Tribes void, if made "before the removal of restrictions therefrom." It is argued through many pages that the land here was subject to restriction within the meaning of these laws, because the patent had not been issued, and the land was therefore subject to the jurisdiction of the Land Department, and it was within the power of that department to cancel the selection for cause. This position is untenable, because the term "restrictions," as used in the acts of 1906 and 1908, refers to prohibitions against alienation. The power of the Land Office to cancel a selection does not constitute a restriction within the meaning of these statutes. Section 22 of the act of 1906 expressly provided:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes *whose selection has been made*, or to whom a deed or patent has been issued for his or her share of the land of the tribe, * * * may sell and convey the lands inherited from such decedent."

Section 9 of the act of 1908 also provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land."

It has been the uniform holding that an allottee may convey the equitable title under a certificate of allotment, before patent, if the lands are not otherwise subject to restraint against alienation. Thomason v. Wellman, 206 Fed. 895, 124 C. C. A. 555; Mullin v. United States, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834; Goat v. United States, 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841; Duncan Townsite Co. v. Lane, 245 U. S. 308, 38 Sup. Ct. 99, 62 L. Ed. 309. There is nothing in Ballinger v. United States, 216 U. S. 240, 30 Sup. Ct. 338, 54 L. Ed. 464, Skelton v. Dill, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. 198, United States v. Wildcat, 244 U. S. 111, 37 Sup. Ct. 561, 61 L. Ed. 1024, Starr v. Long Jim, 227 U. S. 613, 33 Sup. Ct. 358,

57 L. Ed. 670, Monson v. Simonson, 231 U. S. 341, 34 Sup. Ct. 71, 58 L. Ed. 260, Franklin v. Lynch, 233 U. S. 269, 34 Sup. Ct. 505, 58 L. Ed. 954, or Okla. Oil Co. v. Bartlett, 236 Fed. 495, 149 C. C. A. 540, or in any other of the numerous cases cited by counsel, which upon a reasonable interpretation furnishes any foundation for the contention that the Simms deed was void because made before the patent for the land was issued.

[3] 2. It is urged that the approval of the Simms deed by the county court of Okfuskee county was void, because the deed itself was executed in 1909, and the approval was not made until 1913. The mere running of time, however, did not destroy the original deed, nor take away the power of the court to approve it. It simply rendered more difficult the investigation which the court ought to make before such approval. The act of approval is administrative. It contemplates that there shall be such an inquiry as satisfies the court that the making of the deed at the time of its execution, and upon the consideration then paid, is just and equitable, and for the best interest of the grantor. In a field where values are rapidly changing as in western Oklahoma, the passage of four years' time increases the difficulty of such an inquiry, and ought to make the court much more cautious in awarding approval than when the deed is promptly presented. Mere lapse of time, however, does not destroy the deed or take away the power to approve it. Lomax v. Pickering, 173 U. S. 26, 19 Sup. Ct. 416, 43 L. Ed. 601; Lykins v. McGrath, 184 U. S. 169, 22 Sup. Ct. 450, 46 L. Ed. 485.

[4-6] 3. A more serious contention is that the order of the county judge approving the Simms deed was void: (a) Because made at the home of the judge, instead of the courthouse; (b) because the term of the county court for Okfuskee county had been adjourned, and the adjournment entered upon its records, prior to the approval of the deed, and no other term had been legally called, so the order was entered in vacation. Both of these questions were before this court in United States v. Black, 247 Fed. 942, 160 C. C. A. 132, and the decision is conceded to have been against defendants' present contention. We have examined the authorities cited by counsel carefully, and considered their argument, and find no sufficient reason for modifying our former decision. It is true that there is some language in the decisions of the Supreme Court of Oklahoma tending to show that a judge cannot act judicially, except in the place officially established for holding his office, and that his act in vacation is not the act of the court. The cases most nearly in point are McHarry v. Eatman, 29 Okl. 46, 116 Pac. 935 (which seems to be qualified in Campbell v. Dick, 157 Pac. 1062), and Eischoff v. Caldwell, 51 Okl. 217, 151 Pac. 860, L. R. A. 1917E, 359. These were cited and fully considered in the Black Case. There is no decision, however, of the highest court of the state, ruling that the act of a county judge in vacation, in a case like this, is not the act of the court, or that his act outside of the courthouse is void. The local statute declares that for many purposes county courts shall be deemed to be always open. As to matters which

do not require the presence of a jury, the distinction between the judge and the court is formal. It is the common practice of American judges, sitting at nisi prius, to hear arguments, and make orders and judgments, without the presence of their clerk or executive officer. Such orders and judgments, when filed with the clerk and entered upon the court's record, are treated precisely as if the clerk had been present at the time of the argument, and heard the order orally, or received it as signed from the hand of the judge. The rule which counsel urges would greatly hamper judicial administration, without any compensating security to the public. We recognize that a decision of the highest court of a state, defining the powers of an inferior court under the local Constitution and laws, would be binding upon this court. We further recognize that such a decision, determining when an order approving a deed of real property in the state is sufficient to give the deed full validity, would constitute a rule of real property, and would probably be binding upon a federal court sitting in the state. No such decision, however, has been called to our attention as to the specific question here involved, and we therefore can discover no adequate reason for modifying our decision in United States v. Black.

[7-9] We come now to the serious issue in the case. The cross-bill and the offer of proof show that Hannah Barnett's attorney, Crump, while purporting to act as her counsel, in securing the approval of the deed, and in causing a decree to be entered in her case against Simms and Litchfield, forever barring her right to the property, was in fact acting on behalf of Litchfield, and upon a consideration paid by him, and that Hannah was wholly ignorant of what was going on when the deed was approved. While the allegations of the cross-bill are indefinite, we think they are sufficient to forbid a summary disposition of the cause, such as was made. It was the duty of the court to proceed with the trial of the case, to hear the proofs of the defendants, and, if the merits of the controversy required an amendment of the cross-bill, permission should have been granted to amend it. If the charge was substantiated, the approval of the deed was a nullity, and the charge was of too serious a character to be disposed of without a full trial. The cross-bill stands upon the same ground as an original bill seeking to set aside the order approving the deed. It was not a collateral attack. That a court of equity has jurisdiction to set aside judgments obtained by fraud or collusion is not open to doubt. Arrowsmith v. Gleason, 129 U. S. 86, 100, 9 Sup. Ct. 237, 32 L. Ed. 630; Simon v. Southern Railway Co., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492; Burt v. Gotzian Co., 102 Fed. 973, 43 C. C. A. 59; Young v. Sigler (C. C.) 48 Fed. 182; National Surety Co. v. State Bank, 120 Fed. 593, 56 C. C. A. 657, 61 L. R. A. 394. If the solemn judgments of courts can be thus set aside, much more can the administrative acts of a county court, approving the deeds of Indians for inherited lands. One who seduces an agent to betray his principal, or an attorney his client, can hold none of the fruits of his bargain. Alger v. Anderson (C. C.) 78 Fed. 729, and cases there cited.

[10] Plaintiffs claim to be bona fide purchasers. That, however, is an affirmative claim, and must be proven by the party who seeks its benefit. Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 Sup. Ct. 339, 59 L. Ed. 637.

The decree is reversed.