## MUDD v. PERRY et al.

(District Court, N. D. Oklahoma.    July 26, 1926.)

### No. 108.

Indians ⟺28—Action of county court of Oklahoma in probating estate of deceased Osage allottee is subject to law of state providing for appeals (Osage Act April 18, 1912, § 3).

By Act April 18, 1912, § 3, providing that property of deceased Osage allottees "shall in probate matters be subject to the jurisdiction of the county courts of the state of Oklahoma," it was intended that such jurisdiction should be that given by the laws of the state, under which decisions of that court are reviewable on appeal.

In Equity.    Suit by Alex Mudd against Samuel A. Perry and others to remove cloud from title and for injunction.    On motion by defendants for judgment on the pleadings. Sustained.

W. R. Bleakmore and John Barry, both of El Reno, Okl., and O. L. Rider, of Vinita, Okl., for plaintiff.

Chas. B. Rogers and N. E. McNeill, both of Tulsa, Okl., for defendants.

KENNAMER, District Judge.    This is an action in equity by Alex Mudd against Samuel A. Perry and others, to remove a cloud from title to certain property and for an injunction.    Briefly stated, the facts appear as follows:

Lucy Lotson Perry died in 1920, in Craig county, Okl., and J. S. Martin was appointed administrator of her estate.    On the date of the death of Lucy Lotson Perry, she was a member of the Osage Tribe of Indians and the owner of certain Osage headrights and lands in Osage and Craig counties.    She left surviving her Alex Mudd, brother, Maud Lee Mudd, niece, and Samuel A. Perry, who claimed to be her surviving common-law husband.    Alex Mudd and Maud Lee Mudd, in April, 1923, filed in the county court of Craig county an application asking for a distribution of the estate of Lucy Lotson Perry, deceased.    A trial was had upon said application, and the county court entered an order finding Alex Mudd and Maud Lee Mudd to be the sole heirs, and that Samuel A. Perry had no lawful interest in said estate, and ordered the administrator to make distribution to the Mudds of the whole estate.    Samuel Perry appealed to the district court of Craig county, where the issues joined between the Mudds and Perry were tried de novo.    The district court entered a decree in favor of Perry, and awarded him a one-half interest in the estate and the other half to the Mudds.    Alex Mudd appealed to the Supreme Court of Oklahoma where the decree of the District Court was affirmed. 108 Okl. 168, 235 P. 479.    A mandate from the Supreme Court was forwarded to the district court, which in turn forwarded the mandate to the county court.

The plaintiff by this action seeks to remove as a cloud upon his title the judgments of the district and Supreme Courts of Oklahoma, and to enjoin the parties decreed to be the heirs from causing distribution to be made by the county court of the estate in accordance with these judgments.    It is agreed by counsel for plaintiff and defendants that, by the allegations in plaintiff's petition and the answer of defendants, but a single issue is presented, namely, the right of the district court of Craig county and the Supreme

Court of Oklahoma to review on appeal a judgment of the county court of Craig county decreeing the heirs of a deceased Osage allottee and distributing that portion of the estate consisting of certain lands, moneys, and mineral interests, in the Osage Nation, which belonged to her as a member of the Osage Tribe. This question involves a construction of the Act of Congress of April 18, 1912 (37 Stat. 86), particularly section 3 thereof, which reads as follows:

"That the property of deceased and of orphan minor, insane, or other incompetent allottees of the Osage Tribe, such incompetency being determined by the laws of the state of Oklahoma, which are hereby extended for such purpose to the allottees of said tribe, shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma, but a copy of all papers filed in the county court shall be served on the superintendent of the Osage Agency at the time of filing, and said superintendent is authorized, whenever the interests of the allottee require, to appear in the county court for the protection of the interests of the allottee.

"The superintendent of the Osage Agency or the Secretary of the Interior, whenever he deems the same necessary, may investigate the conduct of executors, administrators, and guardians or other persons having in charge the estate of any deceased allottee or of minors or persons incompetent under the laws of Oklahoma, and whenever he shall be of opinion that the estate is in any manner being dissipated or wasted or is being permitted to deteriorate in value by reason of the negligence, carelessness, or incompetency of the guardian or other person in charge of the estate, the superintendent of the Osage Agency or the Secretary of the Interior or his representative shall have power, and it shall be his duty, to report said matter to the county court and take the necessary steps to have such case fully investigated, and also to prosecute any remedy, either civil or criminal, as the exigencies of the case and the preservation and protection of the interests of the allottee or his estate may require, the costs and expenses of the civil proceedings to be a charge upon the estate of the allottee, or upon the executor, administrator, guardian, or other person in charge of the estate of the allottee and his surety, as the county court shall determine."

The contention of counsel for plaintiff is that the finding by the county court was final and conclusive; that the county court acted as a federal agent, and in determining heirship was merely performing a ministerial or administrative function, wholly separate, distinct, apart from, and foreign to the judicial powers vested in said court by the laws of the state of Oklahoma. It is insisted that it has been held in numerous cases that the county court, in approving a conveyance of a full-blood Indian heir, acting under section 9 of the Act of Congress of May 27, 1908 (35 Stat. 315), performs merely a ministerial duty in the capacity as a federal agency. See Haddock v. Johnson, 80 Okl. 250, 194 P. 1077; Barnett v. Kunkel (C. C. A.) 259 F. 394, 170 C. C. A. 370; Bartlett v. Okl. Oil Co. (D. C.) 218 F. 380.

I do not doubt the soundness of these authorities in applying this rule to the approval of conveyances of restricted Indians. But a careful consideration of section 3 of the Act of Congress approved April 18, 1912, supra, convinces me that Congress intended for the probate courts of Oklahoma, in administering estates of deceased Osage Allottees, to proceed with the administration of such estates in a judicial manner and in accordance with the laws of the state of Oklahoma, in so far as such proceedings did not conflict with any paramount federal statute. The language of the statute is that property of deceased allottees shall, in probate matters, be subject to the jurisdiction of the county courts of the state. It appears that this language is broad enough to include the absolute consent of Congress to the county courts of Oklahoma assuming jurisdiction in accordance with the laws of the state over the estates of deceased members of the Osage Tribe of Indians. It is only the superior authority of Congress over the members of the Osage Tribe and their property as dependent wards of the government that prevents the state courts from having jurisdiction over them as citizens of the state and over their property located within such state. Pigeon v. Stevens et al., 81 Okl. 180, 198 P. 309; Dickson v. Luck Land Co., 242 U. S. 371, 37 S. Ct. 167, 61 L. Ed. 371; Goudy v. Meath, 203 U. S. 147, 27 S. Ct. 48, 51 L. Ed. 130.

It seems to me that Congress intended that probate matters involving members of the Osage Tribe of Indians should be handled and determined by the county courts of the state, just as all probate precedure is governed by the Constitution and laws of the state of Oklahoma, subject, however, to the requirement that the Osage Agency be given copies of the pleadings in the matters, as well as notified of all proceedings. The act plainly provides that the superintendent

may, in the interest of members of the tribe, over whom the probate courts assume to exercise jurisdiction, appear and prosecute any civil or criminal remedy for their benefit. Undoubtedly, this language evidences an intention on the part of Congress to consent to the court exercising a jurisdiction in accordance with the laws of the state, which provides for appeals.

I therefore conclude that the motion to dismiss for want of jurisdiction should be overruled, and the motion for judgment of defendants should be sustained; and it is so ordered.