In re JESSIE'S HEIRS.

(District Court, E. D. Oklahoma. May 26, 1919.)

No. 2982.

1. COURTS ⬅258—FEDERAL AND STATE COURTS—JUDICIAL POWER—CONSTITUTION.

The judicial power granted by Const. U. S. art. 3, §§ 1, 2, extends to the trial of all cases in law and equity arising under the Constitution and the other nine classes of cases named in section 2; but Congress is not prohibited from conferring judicial power on other courts or agencies as to cases not covered by the classes specified in section 2, where the exercise of such power is deemed necessary and convenient in the execution of the authority granted it by the Constitution.

**2. COURTS ⬥258—TERRITORIAL COURTS—GRANT OF "JUDICIAL POWER"—CONSTITUTION.**

The authority granted territorial courts to hear and determine controversies arising in such territories is "judicial power," but not by virtue of Const. U. S. art. 3, §§ 1, 2.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Judicial Power.]

**3. COURTS ⬥258—CREATION OF TERRITORIAL COURTS—JUDICIAL POWER—CONSTITUTION.**

Under the grant to Congress by Const. U. S. art. 4, § 3, cl. 2, of power to dispose of and make all needful rules and regulations respecting the territory and other property belonging to the United States, it may create territorial courts, and confer upon them judicial power; the establishment of such courts and conferring of such authority constituting appropriate means to exercise the power to make needful rules respecting such territory.

**4. INDIANS ⬥28—STATE COURTS—JURISDICTION CONFERRED BY CONGRESS—STATE CONSTITUTION.**

The county or probate courts of Oklahoma may not exercise jurisdiction conferred under Act Cong. June 14, 1918 (Comp. St. 1918, Append. §§ 4234a, 4234b), to determine the heirs of a full-blood Creek Indian, if in so doing it would contravene Const. Okl. art. 7, § 12.

**5. INDIANS ⬥10—ALLOTTED LANDS—POWER OF CONGRESS.**

Congress has plenary power over restricted lands allotted to Indians as long as the tribal relation exists, until by some act the title is vested by purchase in some party other than the allottee.

**6. INDIANS ⬥28—DETERMINATION OF HEIRS—STATE COURTS—JURISDICTION.**

Act Cong. June 14, 1918 (Comp. St. 1918, Append. §§ 4234a, 4234b), providing for a determination of the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians, who may die or may have died leaving restricted heirs, by the proper court of the state of Oklahoma having jurisdiction to settle the decedent's estate, applying only to restricted lands of full-blood members of the existing tribes, *held* a valid exercise of legislative power by Congress: the county court of the state in such capacity being a federal agency.

**7. INDIANS ⬥28—DETERMINATION OF HEIRS—PROVISO OF STATE STATUTE—APPLICATION.**

The proviso to Act Okl. April 4, 1919, § 1, was enacted to give the concurrence of state procedure to Act Cong. June 14, 1918 (Comp. St. 1918, Append. §§ 4234a, 4234b), providing for determination of the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have died leaving restricted heirs, by the proper court of the state of Oklahoma having jurisdiction to settle the decedent's estate, and applies only to petitions for determination of full-blood or restricted heirs, as a class, of deceased allottees; otherwise the proviso would conflict with Const. Okl. art. 7, § 12.

**8. INDIANS ⬥28—DETERMINATION OF HEIRSHIP—COUNTY COURT OF STATE.**

When a conveyance from a full-blood member of the Five Civilized Tribes, approved by the county court of Oklahoma without determination of heirship under Act Cong. June 14, 1918 (Comp. St. 1918, Append. §§ 4234a, 4234b), vests rights in allotted lands of such tribes in the grantee, other than a restricted heir or member of such tribe, no letters testamentary or of administration having been granted, and the time limited by the laws of Oklahoma for the institution of proceedings therefor having elapsed without application, as well as in cases where there exists no lawful ground to institute such proceedings, the county court, under Const. Okl. art. 7, § 12, has not power to determine heirship in so far as it affects the title previously vested in such grantee or his assigns.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. INDIANS ⊚⟳27(2)—TITLE TO UNRESTRICTED ALLOTTED LANDS.**

If restrictions on a portion of the allotted lands of the Five Civilized Tribes of Indians are removed by approval of the conveyance by the allottee, and title vests in the purchaser, such title can be affected, determined, or quieted only by means of due process of law in a proper tribunal.

**10. INDIANS ⊚⟳28—DETERMINATION OF HEIRS—PETITION BY RECORD CLAIMANT.**

Under Const. Okl. art. 7, § 12, in proceedings in a county court of Oklahoma, pursuant to Act Cong. June 14, 1918 (Comp. St. 1918, Append. §§ 4234a, 4234b), to determine the heirs of a full-blood Creek Indian, the record claimant of some interest in his estate may be heard by petition in matters relating to the partition or sale of his realty allotted him as a member of one of the Five Civilized Tribes, and arising under the probate jurisdiction of the court; a construction giving effect to all provisions, not only of the act of Congress, but also of Act Okl. April 4, 1919.

**11. INDIANS ⊚⟳28—DETERMINATION OF HEIRSHIP—PROPER TRIBUNAL.**

Where an interest in allotted lands of a full-blood Creek Indian has vested by conveyance approved by the county court of Oklahoma prior to June 14, 1918, no determination of heirship having been made prior to such approval, and no county court of the state now having jurisdiction under Const. Okl. art. 7, § 12, to determine such heirship as a power incident to its probate jurisdiction, the proper tribunal to make the determination is the district or superior court of Oklahoma in a proceeding to quiet title, or for partition or in ejectment with right of removal to the United States District Court in proper case.

**12. INDIANS ⊚⟳28—PARTITION ⊚⟳40—COUNTY COURT OF OKLAHOMA—JURISDICTION.**

Under Const. art. 7, § 12, the only power the county court of Oklahoma may exercise to order or decree the partition or sale of real estate whether in the normal case or in proceedings for determination of the heirs of a full-blood Creek Indian, is when such power arises under the probate jurisdiction of the court.

**13. INDIANS ⊚⟳28—PARTITION ⊚⟳40—COUNTY COURT OF OKLAHOMA—PROBATE JURISDICTION.**

Act Okl. April 4, 1919, supersedes Rev. Laws Okl. 1910, § 6488, and provides the procedure, not only for the exercise of power by the county court of the state to order or decree the partition or sale of real estate when it arises under its probate jurisdiction, and to determine heirship as an incident thereto, but also in special proceedings or administrative acts, with incidental exercise of such judicial power to determine heirship to restricted lands of full-blood members of the Five Civilized Tribes of Indians.

**14. INDIANS ⊚⟳28—DETERMINATION OF HEIRSHIP—COUNTY COURT OF OKLAHOMA—ACTION AS TO VESTED INTEREST.**

Action of a county court of Oklahoma in determining the heirs of a full-blood member of one of the Five Civilized Tribes of Indians is a nullity as to parties having a vested interest by virtue of a conveyance approved by the county court prior to June 14, 1918, except in ordering or decreeing a partition or sale arising under its probate jurisdiction or incidental to the exercise of such jurisdiction.

In the matter of the determination of the heirs of Harper Jessie, deceased, a full-blood Creek Indian, wherein petition was filed for removal to the District Court. On motion to remand. Motion sustained.

Cutlip & Horsley, of Wewoka, Okl., for movant.

Jones & Foster, of Muskogee, Okl., opposed.

J. C. Stone, of Muskogee, Okl., and McDougal, Lytle & Allen, of Sapulpa, Okl., amici curiæ.

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WILLIAMS, District Judge. By virtue of Act Cong. June 14, 1918, c. 101, 40 Stat. 606 (Comp. St. 1918, append. §§ 4234a, 4234b), proceedings were commenced in the county court of Okfuskee county to have determined the heirs of Harper Jessie, deceased, a full-blood member of the Creek Tribe of Indians. Said act is entitled:

"An act to provide a determination of heirship * * * and conferring jurisdiction upon district courts to partition lands belonging to full-blood heirs"

—and provides:

"That a determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the state of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive on said question: Provided, that an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally: Provided further, that where the time limited by the laws of said state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said courts, a petition may be filed therein having for its object a determination of such heirship and the case shall proceed in all respects as if administration proceedings upon other proper grounds had been regularly begun, but this proviso shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws."

Such being removed to this court, on motion to remand, it is contended that it is properly here under section 28 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1094 [Comp. St. § 1010]), which provides:

"Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the District Courts of the United States are given original jurisdiction by this title, which may now be pending or which may hereafter be brought in any state court may be removed by the defendant or defendants therein to the District Court of the United States for the proper district."

The Seventh Legislature of Oklahoma passed an act entitled:

"An act to provide for a determination of heirship in all cases of deceased persons; granting the county court original jurisdiction thereof, and providing the procedure therefor"

—approved April 4, 1919 (chapter 25, Session Laws of Oklahoma 1919), which is in words and figures as follows:

"Section 1. The county court having jurisdiction to settle the estate of any deceased person is hereby granted original jurisdiction to hear and determine the question * * * of fact as to the heirship of such person, and a determination of such fact by said court shall be conclusive evidence of said question in all the courts of this state: Provided, that appeals may be taken from said county court within the time and in the manner provided by law as in other probate matters. If no appeal is taken the judgment of the county court shall be final, and in all cases appealed from the county court when a final determination thereof is had, same shall be a final determination of such fact of heirship: Provided, that where the time limited by the law of this state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said court, a petition may be

filed therein having for its object a determination of such heirship and the case shall proceed in all respects as if administration proceedings upon other proper grounds had been regularly begun, but this provision shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws.

"Sec. 2. In all proceedings under this act to determine the question of heirship of any deceased person it shall be necessary for an heir of the decedent, or a record claimant of some interest in the estate of such decedent to file in the proper county court a verified petition, setting out the names of the deceased, a description of the estate of which the decedent died seized, respecting which the question of heirship is sought to be determined, the names and addresses of all known heirs and record claimants, and the extent of the interest claimed by such heir or heirs of record claimant, if known.

"Sec. 3. Upon the filing of such petition the county judge shall make an order fixing a day for the hearing of said petition, not less than six nor more than ten weeks from the time of making such order, and directing all the heirs of such deceased person and record claimant to lands or any part thereof of which said decedent died seized to appear before the court at the time and place specified, and to submit to the court evidence that is competent to establish heirship of such deceased person. The court shall cause notice of such hearing to be given by serving a copy of said notice on the known heirs and record claimants of said decedent's estate in the manner and within the time as provided for service of summons in civil actions in the district court. The service on unknown heirs and unknown claimants shall be had in the same manner as is now provided for the service of summons in civil actions in the district court for nonresident defendants. The hearing shall be had on the date fixed by the court, except continuances may be had for good cause shown as in civil actions.

"Sec. 4. Upon the date set for the hearing of said petition the county court shall hear evidence offered, and shall render judgment according to said evidence, as in other probate cases, and the court shall determine the heirs of the said decedent as of the date of the death of the said decedent. The judgment of the court shall be final and conclusive on all persons appearing or who have been personally served with summons, and shall be final as to all those served by publication, unless any person so served by publication may file in said county court, within twelve months from the rendition of said judgment, a verified petition setting forth that he or she did not have actual notice of the hearing in time to be present at the hearing, and that he or she, in good faith, believes himself to be an heir of the decedent and the facts on which such belief is based, and in that event he shall be heard thereon. The county judge shall, upon the date of filing said petition, set a date for the hearing of such petition and shall cause all parties of record in said cause to be given reasonable notice thereof of not less than ten nor more than thirty days. Upon such hearing the court shall determine the heirship of said decedent and shall render a decision thereon in accord with the facts shown on said hearings; such judgment so rendered shall vacate the original judgment and shall have the same force and effect as in the original hearing thereon, and any party aggrieved may appeal as from the judgment on the original hearing.

"Sec. 5. In all cases appealed from any judgment rendered under the provisions of this act, the law applicable to appeals in probate matters shall apply, and appeals may be taken from all final orders, as provided for appeals in probate matters.

"Sec. 6. The method herein provided for the determination of the heirs of a deceased person shall not be exclusive, but shall be in addition to the method already provided by law, except that the method provided in section 6488 of the Revised Laws of Oklahoma 1910, shall be no longer in force and said section 6488 is hereby repealed."

See, also, Session Laws 1919, chapter 145.

Appeals lie to the district court from a judgment, decree, or order of the county court as follows: (1) Granting, or refusing, or re-

voking letters testamentary or of administration, or of guardianship; (2) admitting, or refusing to admit, a will to probate; (3) against or in favor of the validity of a will or revoking the probate thereof; (4) against or in favor of setting apart property, or making an allowance for a widow or child; (5) against or in favor of directing the partition, sale or conveyance of real property; (6) settling an account of an executor, or administrator or guardian; (7) refusing, allowing or directing the distribution or partition of an estate, or any part thereof or the payment of a debt, claim, legacy or distributive share; or (8) from any other judgment, decree or order of the county court in a probate cause, or of the judge thereof, affecting a substantial right. Section 6501, Rev. L. Okl. 1910.

"Any party aggrieved may appeal as aforesaid, except where the decree or order of which he complains, was rendered or made upon his default." Section 6502, Rev. L. Okl. 1910.

"A person interested in the estate or funds affected by the decree or order, who was not a party to the special proceeding in which it was made, but who was entitled by law to be heard therein, upon his application, or who has acquired, since the decree or order was made, a right or interest which would have entitled him to be heard, if it had been previously acquired, may also appeal as prescribed in this article. The facts which entitle such person to appeal, must be shown by an affidavit which must be filed with the notice of appeal." Section 6503, Rev. L. Okl. 1910.

"An appeal by a party, or by a person interested who was present at the hearing, must be taken within ten days, and an appeal by a person interested, who was not a party and was not present at the hearing, within thirty days from the date of the judgment, decree or order appealed from." Section 6504, Rev. L. Okl. 1910.

Section 16, art. 7, of the Constitution of Oklahoma, provides:

"Until otherwise provided by law, in all cases arising under the probate jurisdiction of the county court, appeals may be taken from the judgments of the county court to the district court of the county in the same manner as is now provided by the laws of the territory of Oklahoma for appeals from the probate court to the district court, and in all cases appealed from the county court to the district court, the cause shall be tried de novo in the district court upon the questions of both law and fact."

[1] The judicial power granted by section 1, and defined by section 2, article 3, of the Constitution of the United States, extends to the trial of "all cases in law and equity, arising under this Constitution," and of the other nine classes of cases named in said section. Chisholm v. Georgia, 2 Dall. 475, 1 L. Ed. 440; Levin v. United States, 128 Fed. 826, 63 C. C. A. 476; Higgins v. Brown, 20 Okl. 355, 94 Pac. 703. The Congress is not prohibited from conferring judicial power upon other courts or other agencies as to cases not covered by the classes specified in said section 2, where the exercise of such power is deemed necessary and convenient in the execution of the authority granted to it by the Constitution.

[2, 3] The authority granted territorial courts to hear and determine controversies arising in such territories is judicial power, but not by virtue of section 1, as defined by section 2 of article 3 of the Constitution. Under the grant to Congress of power "to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States" (section 3, art. 4, cl. 2),

it may create territorial courts and confer upon them judicial power. The establishing of such courts and the conferring of such authority constitutes appropriate means to the exercise of the power to make needful rules respecting such territory.

Congress conferred jurisdiction upon the United States Court in the Indian Territory, which was created by virtue of said section, to determine citizenship or membership in the Five Civilized Tribes (Stephens v. Cherokee Nation, 174 U. S. 484, 485, 19 Sup. Ct. 722, 43 L. Ed. 1041); upon the Choctaw and Chickasaw citizenship court created by Act July 1, 1902, c. 1362, 32 Stat. 641, to hear evidence and examine judgments of the United States Court in the Indian Territory as to citizenship in the Choctaw and Chickasaw Nations, and determine whether same should be annulled on account of irregularities (Wallace v. Adams, 204 U. S. 415, 27 Sup. Ct. 363, 51 L. Ed. 547; Id., 143 Fed. 716, 74 C. C. A. 540; Ex parte Joins, 191 U. S. 93, 24 Sup. Ct. 27, 48 L. Ed. 110); upon the Commission to the Five Civilized Tribes, commonly known as the Dawes Commission, to appraise and dispose of all lots, occupied or vacant, improved or unimproved, of town sites, located within the Five Civilized Tribes, and to determine preference rights growing out of improvements or occupancy and controversies between claimants thereto (Ross v. Stewart, 227 U. S. 530, 33 Sup. Ct. 345, 57 L. Ed. 626); upon the state courts, when expressly or impliedly concurred in by the state, to try offenses not of federal cognizance, but of local or domestic or purely state concern or character, pending at the time of the erection of the state, whether committed in a territory under the immediate or mediate direction of Congress, either where a territorial government existed with power to legislate for the territory, subject to such restrictions and restraints as Congress might impose, or where Congress had passed laws for its government without the interventions of a subordinate organization (Southern Surety Co. v. Oklahoma, 241 U. S. 582, 36 Sup. Ct. 692, 60 L. Ed. 1187; Higgins v. Brown, 20 Okl. 355, 94 Pac. 703; Ex parte Bailey, 20 Okl. 497, 94 Pac. 553; Ex parte Buchanen, 20 Okl. 831, 94 Pac. 943; Ex parte Curlee, 20 Okl. 192, 95 Pac. 414; Coyle v. Smith, 28 Okl. 168, 113 Pac. 944; Laporte v. State, 14 Ariz. 530, 132 Pac. 563); upon county or probate courts in the state of Oklahoma, to approve conveyances to restricted lands of full-blood heirs of the Five Civilized Tribes (Act May 27, 1908, 35 Stat. 312, c. 199; United States v. Black, 247 Fed. 942, 160 C. C. A. 132; Barnett et al. v. Kunkel et al., 259 Fed. 394, —— C. C. A. ——; Parker et al. v. Richard, 250 U. S. 235, 39 Sup. Ct. 442, 63 L. Ed. ——, decided June 2, 1919); upon the Secretary of the Interior, Commissioner of the General Land Office, and subordinate officers or commissions, to hear and determine claims to the public lands of the nation (United States v. Winona & St. Peter R. Co., 67 Fed. 948, 15 C. C. A. 96; United States v. Ritchie, 17 How. 525, 15 L. Ed. 236); upon justices of the peace and other magistrates of the state by Act Sept. 24, 1789, c. 20, § 33, 1 Stat. 91, to arrest and commit or bail persons charged with a violation of the criminal laws of the United States (Ex parte Gist, 26 Ala. 156); and to hear and determine and

certify the claims of owners of fugitive slaves under Act Feb. 12, 1793, c. 7, 1 Stat. 302, § 3 (Prigg v. Pennsylvania, 16 Pet. 539, 10 L. Ed. 1060).

With regard to naturalization, a subject necessarily within the exclusive regulation of Congress, the first act on the subject, passed in 1790, and all subsequent acts relative thereto, give plenary jurisdiction to the state courts; the language of the act of March 26, 1790, being "any common law court of record, in any one of the states." 1 Stat. 103, c. 3. The act of April 14, 1802, designates "the Supreme, superior, district, or circuit court of some one of the states, or of the territorial districts of the United States or a Circuit or District Court of the United States." 2 Stat. 153, c. 28. The jurisdiction of the state courts as to naturalization seems to be well settled. Levin v. United States, 128 Fed. 826, 63 C. C. A. 476.

The Congress, in providing for the allotment of lands of the Five Civilized Tribes, required the commission to said tribes in charge of that work to make rolls of the citizens or members of each tribe, such rolls to be "descriptive of the persons thereon," and declared the rolls, when approved by the Secretary of the Interior, to be "the final rolls of citizenship." The rolls, as made and approved by the Secretary of the Interior, contained a statement of the age, sex, and quantum of Indian blood of each member. By Act April 26, 1906, c. 1876, § 19, 34 Stat. 137, all restrictions on the alienation of lands of members of said tribes, with the exception of full-bloods, were removed; it being therein provided that "the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior," and directed that a printed and bound copy of the approved rolls be deposited "in the office of the recorder in each of the recording districts for public inspection." United States v. Ferguson, 247 U. S. 175, 38 Sup. Ct. 434, 62 L. Ed. 1052.

By acts passed in 1806 and 1808, jurisdiction was given to the county courts along the northern frontier of suits for fines, penalties, and forfeitures under the revenue laws of the United States. Act March 8, 1806, c. 14, 2 Stat. 354; Act April 21, 1808, c. 51, 2 Stat. 489. By act of March 3, 1815, cognizance was given to state and county courts, generally, of suits for taxes, duties, fines, penalties, and forfeitures arising under the laws imposing direct taxes and internal duties. Act March 3, 1815, c. 101, 3 Stat. 244.

In Claflin v. Houseman, 93 U. S. 130, 23 L. Ed. 833, in referring to these acts, it is said:

"These instances show the prevalent opinion which existed, that the state courts were competent to have jurisdiction in cases arising wholly under the laws of the United States, and whether they possessed it or not, in a particular case, was a matter of construction of the acts relating thereto. It is true that the state courts have, in certain instances, declined to exercise the jurisdiction conferred upon them; but this does not militate against the weight of the general argument."

[4] The county or probate courts of this state may not exercise a jurisdiction conferred under the act of Congress June 14, 1918, if, in so doing, it would contravene section 12 of article 7 of the Consti-

tution of Oklahoma. Claflin v. Houseman, supra; Benner v. Porter, 9 How. 247, 13 L. Ed. 119; Higgins v. Brown, supra; Ex parte Bailey, supra; Ex parte Buchanen, supra; Ex parte Curlee, supra.

At common law an administrator had nothing to do with the lands of his intestate. Under the statutes of this state the only power an administrator has to control the lands of the intestate is for the purpose of collecting the rents and profits, and under order of court to sell the realty, for the purpose of paying debts; the personal estate and lands and profits being insufficient.

The county or probate court having jurisdiction of an estate for the purpose of administration may as an incident, when necessary, exercise such probate jurisdiction to determine the heirs of the intestate. So may the district or superior courts of the state, in exercising jurisdiction for the recovery of the possession of real estate in order to adjudicate the title, as an incident thereto, determine heirship. Article 7, §§ 10 and 12, Constitution of Oklahoma, chapter 145, p. 207, Sess. Laws Okl. 1919; McDougal v. McKay, 237. U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001; Sizemore v. Brady, 235 U. S. 441, 35 Sup. Ct. 135, 59 L. Ed. 308; Pigeon v. Buck, 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007; Jefferson v. Fink, 247 U. S. 288, 38 Sup. Ct. 516, 62 L. Ed. 1117; Browning v. Smith, 139 Ind. 280, 37 N. E. 540; Cooke v. State National Bank, 52 N. Y. 96, 11 Am. Rep. 667.

The Congress, by Act Feb. 8, 1887, c. 119, 24 Stat. 388, as amended by Act June 25, 1910, c. 431, 36 Stat. 855, provided for allotments in severalty to certain reservation Indians, and in such cases for the issuance of what is known as trust patents, the allotments to be held for a period of 25 years for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and at the expiration of such period, unless it be extended by the President, a regular patent to be issued conveying the title in fee. The jurisdiction of the Secretary of the Interior to determine disputes concerning these allotments was retained until Act Aug. 15, 1894, c. 290, 28 Stat. 305, as amended by Act Feb. 6, 1901, c. 217, 31 Stat. 760 (Comp. St. §§ 4214, 4215), when jurisdiction was placed in the United States Circuit Courts to determine heirship; it being provided that all persons, with the exception of members of the Five Civilized Tribes, who are in whole or in part of Indian blood or descent, and who are entitled to an allotment of land under acts of Congress, or who claim to be so entitled to land under any allotment act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded of any allotment made as aforesaid, might commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper Circuit Court of the United States. The Circuit Courts of the United States were by that act given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions, involving the right of any person of Indian blood or descent, except the Five Civilized Tribes, to any allotment of land made as aforesaid.

By Act June 25, 1910, c. 431, 36 Stat. 855, the Secretary of the Interior was given jurisdiction to determine heirship in all cases where

the trust period had not expired; the Five Civilized Tribes being excluded from the provisions of said act. Said act had the effect of divesting such former jurisdiction from the United States Circuit Courts. Hallowell v. Commons, 239 U. S. 506, 36 Sup. Ct. 202, 60 L. Ed. 409; s. c., 210 Fed. 793, 127 C. C. A. 343; Bond v. United States (C. C.) 181 Fed. 613; Pel-ata-yakot v. United States (C. C.) 188 Fed. 387.

[5] As to restricted lands, Congress has plenary power thereover as long as the tribal relations exist, until by some act the title thereto is vested by purchase in some party other than the allottee. Brader v. James, 246 U. S. 88, 38 Sup. Ct. 285, 62 L. Ed. 591; Wilson v. Wall, 73 U. S. (6 Wall.) 83, 18 L. Ed. 727; Reichert v. Felps, 73 U. S. (6 Wall.) 160, 18 L. Ed. 849; Jones v. Meehan, 175 U. S. 30, 20 Sup. Ct. 1, 44 L. Ed. 49.

Section 9 of act of Congress of May 27, 1908 (35 Stat. 315, c. 199), provided that the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of such allottee's land: Provided, that no conveyance of any interest of any full-blood herein shall be valid unless approved by the county court having jurisdiction to settle the estate of said allottee.

In Barnett v. Kunkel, supra, the court said:

"It is urged that the approval of the Simms deed by the county court of Okfuskee county was void, because the deed itself was executed in 1909, and the approval was not made until 1913. The mere running of time, however, did not destroy the original deed, nor take away the power of the court to approve it. It simply rendered more difficult the investigation which the court ought to make before such approval. *The act of approval is administrative.* [Italics mine.] It contemplates that there shall be such an inquiry as satisfies the court that the making of the deed at the time of its execution, and upon the consideration then paid, is just and equitable, and for the best interest of the grantor. In a field where values are rapidly changing * * * the passage of four years' time increases the difficulty of such an inquiry, and ought to make the court much more cautious in awarding approval than when the deed is promptly presented. Mere lapse of time, however, does not destroy the deed or take away the power to approve it. * * * *"

In Parker v. Richard et al., 250 U. S. 235, 39 Sup. Ct. 442, 63 L. Ed. —— (decided June 2, 1919), in construing section 9 of the act of 1908, it is said:

"In the absence of the proviso it would be very plain that on the death of the allottee all restrictions on the alienation of the land allotted to him were removed. But the proviso is there and cannot be disregarded. It obviously limits and restrains what precedes it. In exact words it puts full-blood Indian heirs in a distinct and excepted class, and forbids any conveyances of any interest of such an heir in such land unless it be approved by the court named. In other words, as to that class of heirs the restrictions are not removed, but merely relaxed or qualified to the extent of sanctioning such conveyances as receive the court's approval. Conveyances without its approval fall within the ban of the restrictions. That the agency which is to approve or not is a state court is not material. It is the agency selected by Congress, and the authority confided to it is to be exercised in giving effect to the will of Congress in respect of a matter within its control. Thus in a practical sense the court in exercising that authority acts as a federal agency; and this is recognized by the Supreme Court of the state. Marcy v. Board of Commissioners, 45 Okl. 1, 144 Pac. 611. Plainly, the restrictions have the same force

and operate in the same way as if Congress had selected another agency, exclusively federal, such as the Superintendent of the Five Civilized Tribes."

[6] The act of June 14, 1918, applying only to restricted lands and to full-blood members of such existing tribes, was a valid exercise of legislative power by Congress. In conferring this authority upon the county courts of the state, it is presumed that Congress considered the provisions of the state Constitution. The county court in such capacity is, in effect, a federal agency, acting with the same result as if it was done by the Superintendent of the Five Civilized Tribes, the Commissioner of the Land Office, or the Secretary of the Interior. Barnett v. Kunkel, supra; Marcy v. Board of Commissioners, 45 Okl. 1, 144 Pac. 611. The Seventh Legislature, in passing the act of April 4, 1919 (chapter 25, Session Laws Okl. 1919) obviously had in mind the act of Congress of June 14, 1918.

In Marcy v. Board of Commissioners, 45 Okl. 1, 144 Pac. 611, it is said:

"The Legislature of the state has authorized the county courts to act in such capacity by providing fees to be charged for the approval of deeds of such full-blood heirs; and this court, recognizing the importance of the exercise of superintendence and control by said courts over such conveyances, has provided rules and regulations governing their procedure therein."

[7] The act of Congress of June 14, 1918, relates to restricted or full-blood heirs of deceased citizen allottees of the Five Civilized Tribes. The proviso to section 1 of the act of the Legislature of April 4, 1919, was enacted to give concurrence of state procedure to section 1 of said act of Congress, and applies only to cases or petitions for determination of full-blood or restricted heirs, as a class, of deceased allottees. Otherwise said proviso to said section 1 of the act of the Legislature of April 4, 1919, would conflict with section 12, art. 7, of the Constitution of Oklahoma. Ozark Oil Co. v. Berryhill, 43 Okl. 523, 143 Pac. 173. Chapter 145, Session Laws of Okl. 1919, emphasizes this conclusion. It provides in actions to quiet title, etc., or where "the relief demanded consists wholly or partly in excluding" a person "from any lien or interest" in such property, that the "unknown heirs" may be joined as parties, and under the conditions prescribed service to be had by notice by publication. These acts of the Legislature, construed together, show that the provisions of section 12, art. 7, Const. Okl., were in contemplation when same were passed.

Prior to the act of the Seventh Legislature of April 4, 1919, section 6488 of the Revised Laws of Oklahoma of 1910 was in force, which provided that:

"In all estates now being administered, or that may hereafter be administered, any person claiming to be an heir to the deceased, or entitled to distribution in whole or in part of such estate, may, at any time after the expiration of one year from the issuing of letters testamentary or of administration upon such estate, file a petition in the matter of such estate, praying the court to ascertain and declare the rights of all persons to said estate, and all interest therein and to whom distribution thereof should be made. * * *"

Said section further provides the procedure, including notice, and closes as follows:

"This section shall be cumulative and additional to the provisions of law now existing for determining heirship to any deceased person, and it is not intended that this section shall repeal any existing section of the law governing the administration of estates, except such as may be in direct conflict herewith."

By virtue of the power granted by section 9 of the act of May 27, 1908, the county court was authorized by Congress to approve conveyances by full-blood members of the Five Civilized Tribes of their interest in allotted lands. In such cases coming within the provisions of said section 6488, supra, the county court had the authority to determine heirship; it affording the procedure necessary to the incidental exercise of the power granted by virtue of section 9, supra. As to conveyances approved by the county court prior to June 14, 1918, no heirship being determined by such court, the rights of such heirs executing the conveyance to the lands therein described thereby granted by such approval immediately vested in the grantee. Lomax v. Pickering, 173 U. S. 26, 19 Sup. Ct. 416, 43 L. Ed. 601; Barnett v. Kunkel, supra.

Section 12, art. 7, of the Constitution of Oklahoma, supra, provides:

"The county court, coextensive with the county, shall have original jurisdiction in all probate matters, and until otherwise provided by law, shall have concurrent jurisdiction with the district court in civil cases in any amount not exceeding one thousand dollars, exclusive of interest: Provided, that the county court shall not have jurisdiction * * * in any action for divorce or alimony, or in any action against officers for misconduct in office, or in actions for slander or libel, or *in actions for the specific performance of contracts for the sale of real estate, or in any matter wherein the title or boundaries of land may be in dispute or called in question; nor to order or decree the partition or sale of real estate, not arising under its probate jurisdiction.*" (Italics mine.)

[8] When a conveyance from a full-blood member of the Five Civilized Tribes, approved by the county court without the determination of heirship, vests rights in allotted lands of such Tribes in the grantee, no letters testamentary or administration having been granted and the time limited by the laws of this state for the institution of proceedings therefor having elapsed without such application having been begun, as well as in cases where there exists no lawful ground for the institution of such proceedings in such court, the county court then has not the power to determine heirship in so far as it affects such title theretofore vested in such grantee or his assigns. Section 12, art. 7, supra.

[9] Suppose the power to approve the conveyance had been given to the Secretary of the Interior, which undoubtedly could have been done, and same had been approved by him, and the title vested in the purchaser, would it be contended that Congress could afterwards confide in him authority to determine heirship which would affect the title of such land then unrestricted and owned by such purchaser or his grantees? The power to determine heirship by him could have been exercised by him before the removal of restrictions and the vesting of title in such purchaser. After restrictions are removed by approval of such conveyance and title vests in the purchaser, such title can be

259 F.—45

affected, determined, or quieted only by means of *due process of law* in a proper tribunal.

[10] The "record claimant of some interest in the estate of such decedent" may be heard by petition by the county court in matters relating to the "partition or sale" of such real estate "arising under its probate jurisdiction," granted by section 12, art. 7, Const., supra. This construction gives effect to all the provisions, not only of the act of Congress of June 14, 1918, but also of the act of the Legislature of April 4, 1919, and preserves the provisions of the Constitution.

[11] Where an interest in such allotted lands has vested by conveyance approved by proper county court prior to June 14, 1918, no determination of heirship having been made prior to such approval, and no county court now having jurisdiction under section 12, art. 7, of the Constitution to determine such heirship or interest as a power incident to its probate jurisdiction, the proper tribunal to make such determination is the district or superior court of this state, in a proceeding to quiet title or for partition, or in ejectment, with the right of removal to the United States District Court in a proper case. See chapter 145, Session Laws of Oklahoma 1919, for manner of service prescribed in case of "unknown heirs."

The record discloses that the petition was filed in the proceeding in the county court by Martha Jackson, a minor, by R. W. Parmenter, her guardian; the allegations being that Harper Jessie, deceased, was a duly enrolled member of the Creek Tribe, having died on or about April 7, 1899, and that said county court has jurisdiction over the settlement of said estate, and sole jurisdiction to find and decree who are the parties interested, and who are the heirs of the estate, as provided by section 6488; that on or about November 24, 1902, there was allotted to the heirs of said Harper Jessie, deceased, pursuant to the acts of Congress, certain tracts of land, and that patents had been issued as provided by law, and that said petitioner is the owner of an undivided one-half interest in and to said lands, and—

"That the following persons together with other numerous persons whose names are unknown, and whose whereabouts and interests claimed are unattainable, are claiming an interest in the estate of said Harper Jessie, deceased, and of said lands, as heirs or otherwise. * * * That no administration proceedings have ever been instituted for said estate of Harper Jessie, deceased, the time limited by law for the institution thereof has elapsed, and that there is no lawful ground therefor existing, the estate involved herein being restricted lands. * * * That this court, upon this petition, after due notice and trial thereof, should, by proper decree, determine and declare who are the heirs of said Harper Jessie, deceased, the ownership of said lands and estate, and the interest, if any of each respective claimant thereto or therein, and who are entitled to distribution thereof."

[12] This petition does not disclose the blood or tribal membership of said claimants or whether the interest of any of the said heirs as full-bloods has been conveyed by the approval of the county court. If any such interest has already vested in other parties by approval by the county court of such conveyance, the county court has not now jurisdiction to determine the title thereto, when such determination

would not be "to order or decree the partition or sale of real estate" arising under its probate jurisdiction, or incidental to the exercise of such probate jurisdiction. The only power that the county court may exercise "to order or decree the partition or sale of real estate" is when it arises under its probate jurisdiction. Section 12, art. 7, Const., supra.

[13, 14] Section 6488, supra, provides the procedure for the exercise of such power in the incidental determination of heirship. The act of June 14, 1918, supra, is a special proceeding, involving administrative acts (Barnett et al. v. Kunkel, supra), with the incidental exercise of judicial power for such purpose. The act of the Legislature of April 4, 1919, supra, supersedes section 6488, and provides the procedure, not only for the exercise of power by the county court "to order or decree the partition or sale of real estate" when it arises under its probate jurisdiction, and to determine heirship as an incident thereto, but also in special proceeding or administrative acts, with the incidental exercise of such judicial power to determine heirship to restricted lands of full-blood members of the Five Civilized Tribes. Such action of said court as to such full-blood heirship would be a nullity as to parties other than such tribal members having a vested interest by virtue of a conveyance approved by the county court prior to June 14, 1918, except in ordering or decreeing a partition or sale arising under its probate jurisdiction, or incidental to the exercise of such probate jurisdiction.

Said proceeding was not a removal action. In re Foley (C. C.) 76 Fed. 390; Wahl v. Franz, 100 Fed. 680, 40 C. C. A. 638, 49 L. R. A. 62; In re Cilley (C. C.) 58 Fed. 977; Copeland v. Bruning (C. C.) 72 Fed. 5; Underground Electric Railways Co. of London, Limited, v. Owsley et al. (C. C.) 169 Fed. 671; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867; Public Service Co. of Northern Illinois v. Corboy, Drainage Commissioner, 250 U. S. 153, 39 Sup. Ct. 440, 63 L. Ed. ——, decided June 2, 1919.

The motion to remand is sustained, at the cost of the petitioner for removal.